ENOS L. CRITTENDEN, Complainant and Appellee,
*vs.*
ERASTUS W. DRURY, Defendant and Appellant.

APPEAL IN EQUITY FROM FOND DU LAC CIRCUIT COURT.

A contract for the purchase of real estate is not forfeited in consequence of non-payment at the day, when time is not of the essence of the contract.
Specific performance of contract for the sale of real estate decreed and enforced.

BILL in equity to enforce the specific performance of a con-tract for the sale and conveyance of certain real estate, filed September 1, 1853, by Enos L. Crittenden, the complainant, and assignee of the contract, against Erastus W. Drury, the defendant and vendor therein named.

The bill of the complainant set out, *in hæc verba*, the contract as follows:

" This indenture, made this 1st day of July, in the year of our Lord one thousand eight hundred and fifty-one, between Erastus W. Drury, of the first part, and Hiram Linsley, of the second part, witnesseth, that the said party of the first part, in consideration of the sum of one dollar, part of the purchase money hereinafter mentioned, now actually paid upon the express condition that the said party of the second part, his heirs and executors, administrators and assigns, shall and doth well and faithfully perform the covenants hereinafter mentioned on the part of the said party of the second part to be performed, and make either of the payments named below, doth hereby, for his heirs and assigns, covenant and engage to execute and deliver to the said party of the second part, his heirs or assigns, a deed of conveyance in fee simple, with a covenant of warranty, in the usual form, of and for all that certain piece or parcel of land, situate in Spring Vale, and county of Fond du Lac, and known and described as the southwest quarter of the southwest quarter of section twenty-one, in town fifteen, range fifteen, subject to any valid right of pre-emption. And the said party of the second part, for his heirs, executors, administrators and assigns, doth covenant and engage

to and with the said party of the first part, his heirs, executors, administrators and assigns, to pay the said party of the first part, his heirs and assigns, the just and full sum of seventy-five dollars in one year from date, with interest, or the sum of sixty-two dollars and fifty cents, with interest, in six months from date, and to pay all taxes that shall be assessed on the said premises from the 1st day of July, in the year one thousand eight hundred and fifty-one : Provided always, and these presents are upon this express condition, that in case of failure in the performance of either of the covenants or agreements on the part of the said party of the second part to be performed, the said party of the first part, his heirs, executors, administrators and assigns, shall have the right to declare this contract void, and thereupon to recover by distress upon the said premises, or otherwise, all the interest which shall have accrued upon this contract up to the day of declaring it void, as rent for the use and occupation of said premises; to take immediate possession thereof; to regard the person or persons in possession, on such termination of the contract, as tenant or tenants holding without permission, if that should be necessary to regain the prompt possession of the premises: and to recover all damages sustained by reason of unnecessary destruction of the timber of trees growing on said premises, or by holding over without permission."

This contract was assigned by Hiram Linsley to James M. Gillett, for a valuable consideration, on the 14th day of July, 1852, and by Gillett assigned to Crittenden, the complainant, August 10th, 1853. The bill, after setting out the contract and the assignments thereof, goes on to allege, and does allege, that the complainant, ever since the assignment to him, has been ready and willing, and has offered to pay to the defendant, Drury, all such sums of money as might be due thereon, for principal, interest, or otherwise, and also that Linsley and Gillett had also always been willing and ready to pay the amount due upon the said contract, and had frequently offered to do so, but that the defendant refused to receive the amount due, and convey as by his contract he ought to have done : and further, that Linsley at the expiration of the six months, when the sum of $62.50 and interest was, by the terms of the contract aforesaid, payable, called at the office of Drury to pay the sum and was prepared so

to do, but that Drury was absent, and for that reason the money was not paid; and that at the end of the year mentioned in the contract, he again called at the office of Drury, prepared and willing to pay the amount then due by the terms of the contract and to receive his deed, but Drury was also then absent, and the bill charges that he was absent intentionally to avoid the said Linsley, and the offer and tender of the money due upon the contract aforesaid.

The bill further alleges that while Gillett owned the contract he tendered the amount due upon the contract for principal and interest, and all other charges, and this too, immediately after the contract was assigned to him; and that upon such offer of payment, Drury promised to execute and deliver to the said Gillett a deed of conveyance of the lands described in said contract; and further, that on or about the 11th day of August, 1852, Gillett again tendered in lawful money of the United States the amount due on the contract, and demanded a deed, which Drury refused; and that the complainant had so offered payment on the contract in full, which the defendant had refused; and that each and all the parties interested, from time to time, had always been ready and willing, and had offered to comply with the terms of the contract on the part of the vendee or his assigns, from time to time, respectively.

The bill also states that the defendant advanced the money, or a land warrant, to enter the land for Linsley, with an agreement with the former to take the duplicate in his own name as security, and to give to Linsley a contract to sell to him the land at the government price with interest; that the defendant did so enter the land, and that Linsley paid two dollars, fees, for entering the same, and looked up the land to be entered; that the defendant afterwards refused to contract the land at government price, and that the contract hereinbefore set forth was made between them.

The bill prays a specific performance of the contract and general relief, and answer under oath, is expressly waived.

The defendant in his answer, denies that either Linsley, Gillett or the complainant, have ever been willing, or have ever offered to perform the contract on their part, or to pay the sums due thereon; and denies that Linsley, or any one for him, at the

end of six months, or at the end of the year mentioned in the contract, or at any time before the termination of the contract, by declaring it void, ever offered to comply with the terms of the contract; avers that he has frequently demanded payment, both at the end of the six months, and at the end of the year, and that Linsley expressly told him that he was not able to perform the contract on his part, and that he then and there declared the contract void according to the stipulations thereof: denies that Gillett ever offered to pay him the amount due on the contract, or that he ever promised to give him a deed: and denies that he entered the land for the benefit of Linsley, but avers that he entered it for himself, and that he made only a conditional sale of the land to Linsley.

To this answer a general replication was filed, and issue being joined, testimony was taken on both sides which was read upon the hearing.

Gillett testifies that the contract was assigned to him on the day the assignment bears date, and on the same day of the assignment he called on the defendant and offered to pay him the amount due upon the contract, when the defendant promised to give a deed of the land, and to get his wife to sign and acknowledge it: that the deed was not given, and afterwards he tendered the defendant, in July and in August, 1852, in gold, the amount due upon the contract, recovered $75 and interest, accompanied with a request of a deed of the land, which were refused by the defendant.

Linsley states, that the defendant entered the land described in the contract, and took the duplicate in his own name. That previous to entering the land, the defendant told him he had a land warrant for which he could get as much as he desired, and that if he, Linsley, would find a " forty," he would enter it for him at government price with said warrant; that the witness found the " forty," and told the defendant to enter it, which he did, and which was the same described in the contract. The defendant told Linsley that he would wait six months or a year if he would pay the principal and interest. That after Linsley, had found the land, and the defendant had entered it, he refused to let Linsley have it at government price, although Linsley had paid the fees ($200) for entering, but charged more, and

then the contract was made, as set forth in the bill. This witness also testifies to the fact of his going to the office of the defendant prepared, and there offering to pay the amount due on the contract, at the expiration of six months, and also at the end of the year from the date of the contract, but at both times the defendant was absent.

On the part of the defendant, a witness was called who testified that on the 8th day of July, 1852, the defendant called upon Linsley and demanded the money on the contract; that Linsley said he had not the money to pay; that the defendant offered to receive the money, but that Linsley again said he had not got the money, and the defendant then said he should consider the contract void.

It was also admitted on the hearing, that shortly before the bill was filed the complainant called on the defendant, and offered to pay the whole amount due upon the contract, principal, interest, &c., and demanded a deed, which was refused. It was also admitted that the defendant entered the land June 20th, 1851.

This is all the material testimony taken upon the hearing, and brought under review in this court.

On the hearing, the court below made the following decree, from which the defendant appealed:

"That the said complainant pay to the said defendant, or to the clerk of this court, for his use and benefit, the sum of eighty-nine dollars and seventy-eight cents, within thirty days from this date, and if he shall fail or neglect to pay the same within that time, that the said bill of complaint be dismissed with costs to be taxed against him; and that on the payment of said sum of eighty-nine dollars and seventy-eight cents aforesaid, in manner aforesaid, that the said defendant execute and deliver to him a proper and sufficient deed of conveyance in fee simple, with covenants of warranty in the usual form, of and for all that certain piece or parcel of land situate in Spring Vale, in the county of Fond du Lac, and described as the southwest quarter of the southwest quarter of section twenty-one, in town fifteen, range fifteen, to be approved of by David E. Wood, Esq., residing in the city and county of Fond du Lac, who is hereby appointed a special commissioner for that purpose in case the parties differ

about the same, and also pay to the said complainant the costs of this suit, to be taxed, and that the said complainant have execution therefor, and either party is to be at liberty to apply to this court as occasion may require."

*Edward S. Bragg,* for the complainant, appellee.

*E. W. Drury, propria personæ,* for the defendant, appellant.

*By the Court,* COLE, J.   We are unable to discover any good reason for reversing the decree made in this cause in the court below.   The bill is filed to compel the specific performance of a contract for the sale of real estate.   The contract is in writing under seal, and signed by Drury and Hiram Linsley.   It bears date July 1st, 1851.   Drury agrees to Convey to Linsley, his heirs or assigns, by warranty deed, the southwest quarter of the southwest quarter of section twenty-one, in town fifteen, range fifteen, in Fond du Lac county, upon being paid $62.50 and interest, in six months from the date of the contract, or $75 and interest, within the year.   There is a provision in the contract that in case Linsley made default in the payment of the money when it became due, that then Drury should have the right to declare the contract void, take possession of the premises, and recover rent for their use and occupation.   Linsley assigned this contract to James M. Gillett on the 14th day of July, 1852, and Gillett assigned it to the complainant August 10, 1853.

Undoubtedly the ground upon which Drury resists the performance of this contract is, that Linsley did not strictly comply with its provisions, and pay him the $62.50 and interest on the 1st of January, 1852 ; or the $75 and interest on the 1st of July thereafter.

However, it is not necessary for the disposition of this case, to decide that when there is an express stipulation in a contract of this kind, that the vendor may declare the same void upon the failure of the vendee to pay the money on the day it becomes due, that time is not material, and that a party does not forfeit all claim to the assistance of a court of equity to enforce the contract failing thus to comply with its conditions in regard to the payments ; since Linsley swears that he called at Drury's office

on the 1st of July, 1852—the very day the money became due— prepared to pay him the principal and interest; and was told by Drury's partner that the appellant had gone to Chicago. If this was so, and there is no testimony impeaching this statement of the witness, then Linsley was prepared to fulfill his contract to the very letter. If Drury was not at home to receive his money, his absence could work no prejudice to Linsley or his assignee. Linsley also swears that he was prepared to pay the money from this time up to the 14th of July, the day of the assignment of the contract to Gillett. To rebut this evidence the appellant called upon Hawkins, who testified that he was present on the 8th of July at a conversation between Drury and Linsley about the payment of the money; that Drury asked Linsley if he had the money to pay for the land described in the contract; Linsley said he had not got the money; Drury said that if he had the money he would take it. And upon Linsley again saying that he had not the money, Drury said he should consider the contract void. From this, it would be natural to suppose that Drury's object in making demand for the money, was to notify Linsley that he insisted upon a punctual performance of the contract, and should rescind or declare it void, unless the money was paid according to its terms; and thus we might have had to consider the question of his right to do so at this time. But we are relieved from the consideration of this question by the subsequent conduct of Drury. Gillett says in his testimony, that he called upon him after the contract had been assigned and offered to pay the money due, principal and interest, and asked Drury if he would give a deed. Drury said he would; would make one out, and get his wife to sign it. Gillett left Drury, he says, under the impression that he would give the deed. Drury did not then tell Gillett that the contract had been declared void, because Linsley had not paid the money on the 8th, and that he did not consider himself longer bound by its provisions. He agrees still to comply with it,—recognizes its validity, and waives all advantage, if any he had gained, in consequence of not being paid on that day. Gillett further testifies that he again offered him the amount due on the contract on the 2d of August, 1852, and also some time between the 1st and 11th of September following, tendered in gold the amount

due. At each of the last-mentioned times, Drury declined giving a deed, or receiving the money. What his reasons were for this refusal are not disclosed, and it is useless to speculate about them. Whatever they were, we think they were insufficient to exonerate him from the obligations of his contract. Gillett further swears, that during all the time he held the contract he was ready to pay the money due upon it, and receive the deed, and so repeatedly informed the appellant. It is admitted upon the record, that shortly before the bill was filed the complainant called upon Drury and offered to pay the amount due upon the contract, and demanded a deed, and that Drury refused to receive the money or give the deed. The bill was filed September 1, 1853. Shortly after, the contract was assigned to the complainant. The principles involved in this case are too familiar to require further discussion. If the appellant can successfully, under all the circumstances of the case, resist the decree made below, it would be difficult to imagine an instance where the execution of a contract for the sale of real estate, could be enforced.

Our attention has been called to another view of the case, as being equally decisive of the merits against the appellant; but we shall not enter into much of an examination of it. And it is this, that really the appellant stood in the character of a mortgagee in this transaction. Linsley testifies as follows:

"Defendant said he had a land warrant which he could not get as much for as he wanted; if I would find a forty, he, dedefendant, would enter it for me at government price. I found a forty, the one described in the contract, and told him to enter it. He said he would wait six months or a year on me if I would pay him interest. After I had found the land, and he had entered it, he would not let me have it at government price, he wanted more. I then made the contract hereto annexed. I paid the fees for entering the land, $2.00."

From this, it is contended that Drury entered the land for Linsley, and took the title in himself as security for his money. Such transactions are quite common in this state; and it is insisted that the person making the advances and entering the land in his own name, does so to secure the payment of his money, instead of taking an ordinary mortgage upon the land,

and that the way of doing the business cannot change the real relation of the parties, which is that of debtor and creditor, mortgagor and mortgagee.

There is great plausibility in this reasoning, but as it involves a question of much practical importance, and was not much discussed, we reserve ourselves upon it.

The decree affirmed with costs.