## MARSH and others vs. BELLEW.

EQUITY: EVIDENCE: STATUTE OF FRAUDS: EXECUTORY SALE OF LAND: TITLE TO TIMBER SEVERED FROM LAND: VENDOR'S REMEDIES. *(1, 5) Oral modifications of written contract for sale of land, executed in part, enforced in equity. (2, 3) Extension of time of payment on such contract, when binding. Title to timber severed with vendor's permission, when in vendee. (4, 6) Remedies of vendor who has licensed severance of timber before payment. (7) Costs in equity.*

1. By written contract, plaintiffs agreed to sell to defendant a large tract of pine lands, at a price for each forty to be determined by the quantity of pine-timber and lumber either standing, growing or being thereon, defendant agreeing to pay for each forty $2.50 per M. of such timber and lumber thereon, before removing any of it. Defendant claims that, after the written contract was made, and before the timber was cut, it was agreed between the parties that he should pay for the damaged and down timber $1 per M. *Held*, that, as it was a matter of some doubt under the original contract, whether defendant was bound to pay for any damaged or unmerchantable lumber or timber, there was a sufficient consideration to sustain the alleged parol contract; and that, though it might be for the sale of an interest in real estate, it could be enforced by plaintiffs against defendant after the latter had cut the timber and converted it to his own use, and was valid to limit plaintiffs' recovery for the damaged and down timber to $1 per M.
2. Waiver of payment at the time fixed in a contract for the sale of real estate, or the extension of the time for such payment, is not such a variation of the terms of the written contract as to exclude it from being received in evidence in a court of equity; and when such waiver or extension of time has been given, by parol or otherwise, and the purchaser has acted upon the faith thereof, the vendor will be bound. And upon proof in this case that plaintiffs permitted defendant to cut and remove timber from the lands and manufacture the same into lumber, without prepayment for the lands: *Held*, that title to the timber so converted into personalty passed to the defendant.
3. If such permission granted by plaintiffs to defendant was merely a parol license to cut and remove the timber, on condition of future payment, still the title to timber cut and removed under such license before it was revoked, vested in defendant.
4. Defendant covenanted to build and maintain a saw-mill of a certain value upon a forty-acre tract to be selected by him from plaintiffs' said lands, which tract was to be conveyed to him by plaintiffs; and, after mortgaging the same to a certain amount, he was to give plaintiffs a second mortgage on such forty with the mill property, as security for his per

formance of the whole contract; and in consideration of the erection and maintenance of said mill, plaintiffs covenanted to sell him their pine lands as above stated. This action was brought to foreclose defendant's interest in all the lands described in the contract, and in the timber cut by him therefrom, and the products of such timber; to establish a lien in plaintiffs' favor upon said saw-mill and appurtenances, and upon defendant's interest in said forty-acre tract, for damages accruing to plaintiffs from his breach of said contract; and also a lien in their favor upon the timber so cut, and its products, for the value of the timber at $2.50 per M. (defendant not having paid therefor); and plaintiffs prayed for the appointment of a receiver to take charge of the mill, lumber, etc., to sell such lumber, etc., and, out of the proceeds, to pay plaintiffs the contract price for the timber taken from said lands, and also for an injunction restraining defendant from interfering with the lands, mills and lumber, or incumbering or disposing of the same. A receiver having been appointed and a temporary injunction granted, the court, on a trial of the issues, having found that the timber, lumber, etc., in defendant's possession were his property, and having adjudged a strict foreclosure of his rights in the real property, under the contract, unless within six months he should pay plaintiffs the amount found due them, and having rendered a personal judgment against him for that amount, and enjoined him from cutting timber or doing any other waste upon the lands until payment of such amount, dissolved the order appointing a receiver and restraining defendant from disposing of the personal property. *Held,*

(1) That there was no error in vacating the appointment of a receiver when it appeared that the personalty in defendant's possession was his property.

(2) That, whether or not a court of equity could, under any circumstances, give the vendor of real estate a lien for the purchase money upon personal property of the vendee, because such personal property in its natural state had been a part of the realty (a point not decided), the equities of this case do not require such a lien to be declared; the judgment actually rendered being apparently sufficient to protect plaintiffs' rights, and there being other creditors of the vendee, having apparently equal equities with the vendors.

5. After the written contract above stated was made, there was an oral agreement between the parties, by which defendant was permitted to erect the saw-mill on any one of three tracts of lands *not described in said original contract,* with a stipulation that for the forty on which it sh~ ·11 be erected defendant should pay at the rate for stumpage mentioned in the contract, and for the other two forties, *five dollars per acre in addition* to the value of the timber thereon; and this modification of the contract as to the location of the mill was without any new consideration, except defendant's agreement to purchase the two additional forties at the rate above mentioned. Such oral agreement having been executed

by the defendant, except as to payment of the price: *Held*, that it will be enforced in equity. .

6. The court found that, after the erection of said mill on one of said additional forties, defendant, *without authority*, executed and delivered to one H., for value, a warranty deed of said forty, the contract as modified not providing for the execution of such deed. The judgment provides that *no part* of the premises contracted to be sold to defendant (including the three additional forties) can be redeemed without payment of the *whole* sum due plaintiffs. Without determining how far this judgment (which seems to leave title in fee to the mill property in plaintiffs) can bind H.: *Held*, that under it plaintiffs cannot be prejudiced by the finding as to such oral modification of the contract, in any subsequent litigation as to the ownership of the mill, under the deed to H. or otherwise.

7. A denial of *costs* to either party in this action was not an abuse of discretion.

APPEAL from the Circuit Court for *St. Croix* County.

This action was founded upon a contract under seal, entered into in August, 1875, of which the following are the essential provisions:

"The party of the second part [*Bellew*] hereby covenants and agrees with the parties of the first part [stating a nominal consideration] to build and maintain a good, substantial steam saw-mill upon certain lands hereinafter described, the mill to be of the value of at least nine thousand dollars. The land upon which said mill is to be built is to be hereafter selected by the party of the second part, and the forty upon which it is built and erected is to be conveyed by the parties of the first part by good and sufficient deed, conveying to the party of the second part the title thereof in fee simple. And the said party of the second part is to have the right to mortgage the forty upon which the said mill is built, after the same shall have been conveyed to him as aforesaid, to an outside party, in a sum not exceeding $6,500; and, after the same is so mortgaged, he covenants and agrees to give to the parties of the first part a second mortgage on the land upon which said mill is built, and which is conveyed to him as aforesaid, which second mortgage is to be conditioned for the faithful performance of this contract on the part of the said party of the second part.

" And the parties of the first part, in consideration of the building and maintaining of said mill, covenant with the said party of the second part to sell and convey to him the following described real estate and lands in the state of Wisconsin: [Here follow descriptions of sixteen quarter-quarter sections of land " held by Augustus L. Smith as trustee of the heirs of Samuel Marsh, deceased," eight like tracts "held by the trustees of the estate of John Magee, deceased," three owned by *Erastus Corning*, two by *William Allen Butler*, two by *Breese J. Stevens*, one by *L. W. Ledyard*, and five by *Horatio Seymour*.]

" The price of each government forty acres of the above described lands is to be determined by the amount of pine timber and lumber upon the same, either standing, growing or being thereon, in the following manner: The amount of the aforesaid pine is to be estimated by J. P. Buck, acting on behalf of the parties of the first part, and the aforesaid party of the second part; and in case they are not able to agree upon the amount, they may call in a third party to act with them, and the decision of the majority of the three shall be final. In case said Buck shall not be able to act on behalf of the parties of the first part, they shall have the right to select some other suitable person to act in his place.

" And the said party of the second part covenants to pay $2.50 per thousand feet for the pine timber and lumber standing, growing and being upon each forty or eighty acre tract when the same is estimated as above, as the price of each tract; the same to be paid for in advance before cutting or removing any timber or lumber from such tract. The land so estimated and sold may be by forties or eighties, but no tract to be sold in a quantity less than forty acres according to the government survey. And the said party of the second part covenants to take off, remove, cut, saw and pay for at least two million feet of said timber and lumber each and every year, upon the above conditions, for six years from the first day of December, 1875; this agreement only being intended to have binding force and effect for six years from said first day of December, and no longer, without an express agreement in writing ex

tending it. It is further covenanted that the tracts or forties to be selected and estimated are to be both remote and near to the said mill, so as to divide the tracts about equally into long and short haulings from said mill. It is further covenanted and agreed that at any time when this party of the second part has paid for any of the above land purchased upon and under the foregoing conditions, if he sells the same to a *bona fide* purchaser for the purpose of occupying the same, the parties of the first part shall execute to him or the purchaser, at the second party's request, a deed or deeds of such tract or tracts that he sells as aforesaid.

"It is further covenanted that the party of the second part is to pay all taxes, including the present year, 1875, that may be levied or assessed upon any of the above described lands, and not allow any of said lands to be returned for unpaid taxes; and when said lands are all paid for according to the above conditions, then the parties of the first part each severally binds himself to deliver to said party of the second part a good warranty deed of so much of said lands as he is now seized of, either as owner in fee simple or as trustee.

"And it is further covenanted that all the buildings of every kind and nature that are erected upon the tract upon which the mill is built and maintained, and all machinery, fixed or movable, in or about said mill, are to be considered as a part of the land for the security of parties of the first part for the faithful performance of this contract by the party of the second part as above set forth, under said second mortgage.

"And the party of the second part further covenants to take charge of all the above described lands, and to keep off all trespassers, and to be accountable to the parties of the first part for all trespasses that may be committed upon said lands before the termination of this agreement, and covenants to the same conditions on lands hereafter described.

"And the said Augustus L. Smith, as agent of the parties of the first part, and of Wm. B. Ogden of New York, covenants and agrees with the aforesaid party of the second part, for and in consideration of the premises, and the sums hereinafter men-

tioned, to reserve and sell to the party of the second part all the pine timber and lumber standing, growing or being on the tracts of lands hereinafter described, for $2.50 per thousand feet, to be paid for before the same is cut or removed from the land, and the amount of the same to be estimated and agreed upon in the same manner and by the same parties as the pine on the lands above described, from time to time, as the party of the second part may wish, for six years from December first aforesaid, in not less than forty-acre tracts, according to government survey. [Here follow descriptions of ten quarter-quarter sections referred to in this covenant.] "

This action was brought in April, 1877, against *Bellew*, the vendee named in said contract, by the persons (or their representatives) by whom or in whose behalf, as parties of the first part, said contract was executed. The complaint alleges that, shortly after the contract was made, the quantity of pine timber upon each forty therein described was estimated in the manner there provided for; that plaintiffs are and always have been ready and willing to perform on their part, but that defendant has wholly failed to comply with his covenants; that, soon after the contract was made, he entered upon a certain quarter-quarter section, being one of the tracts mentioned in said agreement which were not contracted to be sold, but the pine timber upon which defendant was at liberty to buy [i. e., one of the ten forties described in the last covenant as above stated], and erected thereon a steam saw-mill, not exceeding $7,000 in value; that he has failed to give plaintiffs the mortgage provided for in the contract; that he has wrongfully and without authority executed and delivered, together with his wife, their warranty deed of the forty on which the mill buildings are situate, to one Hubbard, for the consideration of $10,000 expressed in the deed, which deed has been recorded, but, by reason of the facts above stated, is not a cloud upon the title to said land; that, after the making of said contract, defendant, without authority and in violation of his covenants, entered upon nine specified forties, being part of the lands first described in said contract, upon which there were 3,655,000 feet

of pine timber, as estimated pursuant to the contract; that the value of said timber, by the terms of the contract, was $9,137; that defendant wrongfully cut all or nearly all of said timber without paying plaintiffs in advance therefor, and has neglected and still neglects and refuses to pay them therefor, though often requested so to do; that he hauled said timber to said mill, and manufactured a large part of it into lumber and shingles: that he has at the mill upwards of 500,000 feet of pine logs ready to saw into lumber and shingles; that he has manufactured at said mill, from logs taken from said lands, upwards of 200,000 feet of clear pine lumber, which is now in the mill yard, and also upwards of 10,000,000 shingles, about one-half of which he has hauled to the depot at Hersey in said county, while the residue remain in the mill yard; and that said logs, lumber and shingles are worth, at the yard and depot, more than $20,000. The complaint further alleges that defendant wrongfully threatens to dispose of said shingles, has shipped a large quantity of them, has made bills of sale of portions of the shingles and lumber to divers parties unknown to plaintiffs, and is turning over logs, lumber and shingles, on account of labor performed thereon and supplies furnished him, and that a large number of persons, claiming liens of various kinds upon the lumber, etc., threaten to file liens and commence actions against defendant to enforce the same; that all persons so claiming liens have had due notice of plaintiffs' rights; that defendant owes persons who performed work on said logs and lumber, more than $12,000, and is also owing a large number of other persons, and is insolvent and unable to pay such indebtedness. Other allegations are made to show that the interests of all parties require the appointment of a receiver to take charge of the personal property, convert the remaining logs into lumber and shingles, and sell the whole as soon as possible. The complaint then alleges that plaintiffs absolutely own, or at least have a first lien upon, all said logs, lumber and shingles, to the amount of at least $9,137, the price of the land from which the timber was cut; that the several tracts agreed to be conveyed by

plaintiffs are adjacent to each other, and plaintiffs entered into the agreement for the sake of the benefits which were to accrue to each of them from the erection of said mill in the vicinity of his land; that defendant, in consequence of his embarrassed condition, threatens to abandon his contract, and plaintiffs fear and believe that he intends to abandon said mill; and that, unless proceedings are immediately taken for the protection of the mill and machinery and said personal property, there is danger of the same being lost or materially injured, to the irreparable damage of the plaintiffs as well as of defendant's other creditors. It is further alleged that, in defendant's selection of the tracts upon which he entered and from which he cut the timber, he violated his covenants, in that he did not take tracts both remote from and near to said mill, but took those forties nearest to the mill. It is then alleged that defendant has further violated his agreement by failing to pay for, at the stipulated rate, and thereafter to cut and remove from the lands first described in the contract, 2,000,000 feet of pine timber per year; that for the year ending in August, 1876, there was due therefor from defendant to plaintiffs $5,000, and for the year ending in August, 1877, the further sum of $5,000, with interest. It is then alleged that defendant has failed to pay the taxes upon the lands described in the contract for the year 1876, the amount of which is stated. It is further alleged that, by reason of defendant's nonperformance of his agreement, plaintiffs have suffered damages, exclusive of those resulting from the cutting and removal of timber as aforesaid, in the sum of at least $10,000, from injuries to the pine timber still upon said lands, occasioned by winds, fires and worms while said timber and lands were by said agreement withdrawn from the market, and from defendant's failure to pay for and cut timber according to his agreement, and from other causes.

The judgment asked by the complaint is, that defendant perform said contract on his part, including payment to plaintiffs of the full value of the timber cut and removed at $2.50 per M., with interest from the time such payment should have

been made, and costs of this action, within a time to be fixed
by the court, or that, in default thereof, he and all persons
claiming under or through him may be barred of all equity in
the lands, mill property and personalty described in the com-
plaint or in said contract; that plaintiffs may be adjudged the
owners of, or at least to have a lien upon, said mill property and
the forty upon which the mill is situate, for their damages, to
wit, at least $10,000, occasioned by defendant's failure to per-
form his agreement; that, if the court should hold that the
plaintiffs are not the absolute owners of the timber cut from
said lands, and the manufactured products thereof, then they
may be adjudged to have a lien thereon, paramount to all
other liens, for the value of said timber at $2.50 per M., with in-
terest; that the respective interests of said plaintiffs in the
mill property, the personalty, and the timber still standing on
the lands, may be ascertained and determined, or, in case the
plaintiffs shall be adjudged to have liens on the mill property and
on the personalty, that then their respective interests in said
lands (?) be ascertained and determined, or that the moneys
realized thereon be apportioned to them according to their re-
spective interests; that a receiver be appointed to take charge
of the mill and machinery, and of the personal property,
with the usual powers, and that he convert the personal prop-
erty into money; and that out of the proceeds plaintiffs may
first be paid for the timber cut and removed from said lands,
with interest, and such other compensation as they may be
justly entitled to, and the residue may be brought into court
for the persons entitled thereto; that defendant, his agents,
etc., may be enjoined from encumbering, disposing of or inter-
fering with any of said real or personal property; that all
other persons having claims upon said saw-mill or personal
property may be allowed to come in as parties defendant; that
the rights of all parties claiming liens upon said mill and per-
sonalty may be adjudged in this action; and for general re-
lief.

Upon the verified complaint, an order of injunction as prayed
for, and for the appointment of a receiver to hold the property

until the further order of the court, was obtained from the county judge.

The answer need not be stated. The facts alleged therein as a defense, so far as they were found true by the circuit court, will sufficiently appear from the opinion.

The court rendered judgment that defendant pay into court for the use of plaintiffs the sum of $6,298.94 [found to be the price of the timber removed from plaintiffs' lands], and the further sum of $400 [the price, in addition to stumpage, of two forty-acre tracts, of the lands secondly described in the written contract, which defendant had taken possession of and cut the timber from, under a subsequent oral agreement], with interest from the commencement of the action, and also redeem the lands from sales for the taxes of 1876, and file with the clerk certificates of such redemption — all within six months from the entry of such judgment; that, in default of such payments and redemption, defendant, and all persons claiming under him, be foreclosed of all equity of redemption in the premises described in the complaint, and the title to said lands stand unaffected by said contract, in the plaintiffs respectively; that thereupon defendant forthwith deliver possession to them, and deliver up said contract for cancellation; and that plaintiffs recover of defendant the sum of $7,285 and a further sum of $     sufficient to make said redemptions, and have execution therefor. It is further adjudged that defendant, his agents, etc., be enjoined from cutting any timber or doing any waste on said lands, until payment according to said contract shall be fully made, and, in case the same are not made, be perpetually enjoined. It is further adjudged that the personal property described in the complaint (and not already disposed of by the receiver, by order of the court, in settlement of liens for labor and supplies) is the property of the defendant; and that the order appointing a receiver and restraining defendant from disposing of the personal property be discharged, with a provision for its continuance in case of an immediate appeal from the judgment, upon security given by

the plaintiffs.   It is further adjudged that neither party have costs in the action.

From so much of the judgment as fixes the amount to be paid by defendant to plaintiffs, the latter appealed.

For the appellants, there was a brief by *Sloan, Stevens & Morris*, and oral argument by *Mr. Stevens*.   They maintained the following, with other propositions:   1. That the rights of the parties were to be determined by the terms of the written contract, without reference to the alleged parol modifications or licenses.   (1) Such modifications or licenses were not properly pleaded.   (2) Proof of parol modifications is inadmissible where the original contract was required by the statute to be in writing.   Benj. on Sales (ed. of 1877), § 216; *Tyers v. R. & F. Iron Co.*, L. R., 8 Exch., 315; *Plevins v. Downing*, L. R., 1 C. P. Div., 220, 225; *Hickman v. Haynes*, L. R., 10 C. P., 598; *Swain v. Seamens*, 9 Wall., 254, 272; *Ladd v. King*, 1 R. I., 224; *Dana v. Hancock*, 30 Vt., 116; *Gault v. Brown*, 48 N. H., 183–6; *Espy v. Harrison*, 14 Pa. St., 308; 1 Sugd. Vend. (8th Am. ed.), 165, note (m); 1 id. (14th Am. ed.), 252 (m); 1 Washb. R. P. (4th ed.), 632 (10), 634 (10 a)– 640; 1 Chitty on Con. (11th Am. ed.), 153–5; 2 L. C. in Eq., Pt. I, 935, 1018–22; 1 id., 1040–44, 1046–58; Smith on Con. (6th Am. ed., by Sharswood), 420; 1 Addison on Con. (Am ed. of 1875), §§ 359, 362, 372, 378; 1 Hilliard's Am. Law (ed. of 1877), 252, sec. 6, note 3.   (3) If proof of such a parol agreement is ever admitted *in equity*, it must be " the most unequivocal proof; " and even then the agreement cannot be used as a defense against a demand of specific performance of the original contract, or as a ground for the specific performance of the contract as alleged to be modified by parol, unless there has been such part performance of the new agreement as will render it tantamount to a written agreement.   1 Sugd. Vend. (8th ed.), p. 166, sec. 27; *Van v. Corpe*, 3 Myl. & K., 277; *Hazelton v. Putnam*, 3 Chand., 117; *Kent v. Lasley*, 24 Wis., 654; *Washburn v. Fletcher*, 42 id., 152, and cases cited by counsel on p. 164.   (4) The parol modification must not itself be such

Marsh and others vs. Bellew.

an agreement as the statute requires to be in writing. Smith on Con., 44 (1); 1 Johns. Cas., 22; 7 Cow., 50; 5 id., 497; 4 N. H., 40; 3 Met., 486; *Goss v. Ld. Nugent*, 5 Barn. & Ad. (27 E. C. L.), 58; *Stowell v. Robinson*, 3 Bing. N. C. (32 E. C. L.), 928; *Stead v. Dauber*, 10 Ad. & El. (37 E. C. L.), 57; *Marshall v. Lynn*, 6 M. & W., 109; *Emmett v. Dewhurst*, 21 L. J. (Ch.), 497; 3 Mac. & G., 587. (5) Such a modification, to be valid, must rest upon a *new consideration*. *Cordwent v. Hunt*, 8 Taunt., 596; *Delacroix v. Bulkley*, 13 Wend., 71; *Eddy v. Graves*, 23 id., 82; *Smard v. Patterson*, 3 Black, 353; *Chapman v. McGrew*, 20 Ill., 101; *Hume v. Taylor*, 63 id., 43; *Henning v. Ins. Co.*, 47 Mo., 425; *Walker v. Greene*, 22 Ala., 679; *Miller v. Hemphill*, 9 Ark., 488; 4 G. Greene, 181; 40 Me., 162; 6 Ohio St., 1; *Dodge v. Crandall*, 30 N. Y., 294; *Curtiss v. Marshall*, 8 Bosw., 22; *Tinker v. Geraghty*, 1 E. D. Smith, 687; 13 Wend., 71; 21 id., 628; 23 id., 82; 15 Johns., 200; 14 id., 48; 1 Johns. Cas., 125; 7 Cow., 48; *Pierrepont v. Barnard*, 5 Barb., 364, cited with approbation in Sharswood's notes to Smith on Con.; *Richardson v. Johnsen*, 41 Wis., 103. On extending time, see 1 Johns. Cas., 22; 3 Johns., 628; 6 Duer, 203; 12 Barb., 366; 20 id., 42, 509. (6) Each of the modifications of the original contract here claimed is subject to one or more of the objections above stated. (7) In this state, a sale of standing timber passes an interest in the land, and the contract must be in writing; and the rule is not affected by calling the transaction a license. *Strasson v. Montgomery*, 32 Wis., 52; *Young v. Lego*, 36 id., 394; *Daniels v. Bailey*, 43 id., 566; *Mumford v. Whitney*, 15 Wend., 380; *Cook v. Stearns*, 11 Mass., 536; *Miller v. Syracuse R. R. Co.*, 6 Hill, 61; *Fentiman v. Smith*, 4 East, 108; *Hewlins v. Shippam*, 5 Barn. & Cress., 210; *Bryan v. Whistler*, 8 id., 288; *Cocker v. Cowper*, 1 Cr., M. & R., 418. (8) A mere revocable parol license to cut standing timber from land, while it may estop the licensor from suing in trespass, cannot operate to transfer the title to the timber cut, because that would convert it into a sale of standing timber. *Tyson v. McGuineas*, 25 Wis., 656. 2. That title to the manufactured

lumber, therefore, remained in the plaintiffs, though they desired, and asked in this suit, only to hold it as security for the performance of the contract; and the court erred in dissolving the order appointing a receiver, etc. *Sea Ins. Co. v. Stebbins*, 8 Paige, 567; *Fairbank v. Cudworth*, 33 Wis., 358, and cases there cited. 3. That plaintiffs were entitled to costs.

For the respondent, there was a brief by *Bartlett & Hayden*, and oral argument by *Mr. Bartlett.* They contended: 1. That the judgment gave plaintiffs even larger relief than they were entitled to under the original contract. They could only have a strict foreclosure of that contract; and, in determining the amount due under it, they could only claim for merchantable timber, whereas the judgment awards them $1.00 per M. for damaged timber. They could have no claim for timber cut and manufactured by their permission. *Northrup v. Trask*, 39 Wis., 515. 2. That plaintiffs were not injured by the location of the mill. If defendant had no right to build it where he did, the mill and all the improvements connected with it became a part of the realty, and property of the plaintiffs. 3. That parol evidence of an extension of the time of payment was admissible. 1 Addison on Con. (Am. ed.), § 243; Story on Con. (5th ed.), § 824; 29 Me., 271; *Bishop v. Busse*, 69 Ill., 403; *Stowell v. Eldred*, 39 Wis., 626; *Jones v. Keyes*, 16 id., 563; *Martineau v. May*, 18 id., 54; *Peter v. Johnson*, 22 id., 21; *Kent v. Agard*, 24 id., 378; *Hannan v. Oxley*, 23 id., 519; *Horner v. Railway Co.*, 38 id., 165. 4. That costs were at the discretion of the court. *Hart v. Smith*, 44 Wis., 213.

TAYLOR, J. This is an appeal from part of a judgment entered in favor of the appellants in the court below, for the foreclosure of a land contract made with the defendant.

The parts of the judgment complained of are: 1. That the court did not find the value of the timber cut by the defendant as great as it should have found. 2. That the court found that the title of the timber cut from the lands of the defendant, was in the defendant, and not in the plaintiffs. 3. That

the court improperly vacated the order granting an injunction and appointing a receiver in the case. 4. That the court should have adjudged the costs in favor of the plaintiff.

By the terms of the contract, the price to be paid for each forty acres of land agreed to be sold by the plaintiffs to the defendant, was to be determined by the amount of pine timber and lumber upon the same, " either standing, growing or being thereon." The amount was to be estimated in the way specified in the contract. There is no complaint made by the appellants that the amount of timber cut by the defendant was not properly estimated; and no fault is found with the finding of the court below as to the quantity of the timber cut and taken from the lands by the defendant; but the appellants insist that in estimating the value the court should have charged the defendant $2.50 per M. feet for each M. feet cut by him, whereas the court charged him $2.50 per M. for 63-100 of the amount and $1.00 per M. for 27-100 of the amount.

This finding is based upon a finding of the court below that, after the written contract was entered into and before the timber was cut, it was agreed between the parties that the defendant should pay for the damaged and down timber on the lands at the rate of $1.00 per M. feet. We think the evidence is quite satisfactory that such subsequent agreement was made between the parties; and we are also of the opinion that such agreement, though by parol, must be sustained so far as the same has been acted upon by the parties.

Under the original contract, it was a matter of at least some doubt whether the defendant was bound to pay for any lumber or timber which was damaged or not merchantable; this new agreement may therefore be treated as an amicable settlement by the parties of the construction which should be given to the original contract, and limiting it to such timber as was undamaged and merchantable, and making a new contract by which the defendant, in consideration of such construction of the original, agreed to take the down and damaged timber upon the lands at the rate of $1.00 per M. feet, and have the same estimated at that price, with the other timber, in fixing

the value of the lands sold, and to be taken and paid for at that price when taken from the lands not sold.

There was certainly a sufficient consideration to sustain the contract; and though it may be a contract for the sale of an interest in real estate, there can be no doubt but that the plaintiffs could enforce the same against the defendant, after the defendant had executed the same on his part by cutting and converting the timber to his own use. Certainly there can be no ground for refusing to enforce the same, so long as the defendant does not object to its enforcement.

But as the learned counsel for the appellants did not press this point upon our consideration, and very strongly intimated that they were disposed to admit that the new arrangement was in fact made, and was in itself an equitable and just one, and that, if there had been no other grievances in the findings of the court below than the one relative to the value fixed upon the timber and lumber cut and removed by the defendant, they would not have felt called upon to ask this court to review the judgment of the court below, we content ourselves with the statement made above, without entering into any further discussion on the point.

The point taken by appellants' counsel by their second exception to the findings of the court below, raises the question as to whether the title to the timber and lumber cut and converted by the defendant was in the appellants or in the defendant. The court below held that the title vested in the defendant. This ruling the counsel for the appellants insist was erroneous, and most prejudicial to their interests, and that the court ought to have found that the title to such timber and lumber remained in the plaintiffs until the same was fully paid for by the defendant. The ground of this claim is, that, as to a part of the timber, the land upon which it stood was not paid for by the defendant as agreed in the contract or in any other way, and as to a part, the timber itself (there being no agreement to sell and purchase the lands on which it stood) was not paid for according to the contract or in any other way.

The learned counsel for the plaintiffs urge that, as the original written contract expressly provided that no timber should be cut or taken from either class of the lands before it was paid for, the cutting and taking without such payment were mere acts of trespass, and did not divest the plaintiffs of their title to the same. If that condition as to payment has not been changed or waived by a subsequent agreement, then we should agree with the plaintiffs that the title to the timber cut and taken from the land would still be in them.

By the written contract, the appellants agree to sell to the defendant a large tract of pine lands, the defendant agreeing to pay for them a price to be determined by the quantity of pine timber on the same, and this price, it is agreed, shall be paid in installments as the timber is cut, the installments to be paid in each case before the timber is cut; and the defendant is to have a conveyance for none of the tracts paid for, except such as he may sell to other parties, until the whole contract is performed on his part. To make the contract more readily understood, it may be treated as though it were an agreement to sell the defendant a single tract of pine land, the price to be fixed by the quantity of pine timber on the same valued at a definite sum per M. feet, to be paid before the defendant should be authorized to cut and remove the timber on the same. It is clear that in such case there is a valid contract for the sale of the lands; the only thing left undetermined is the value, and that can easily be fixed according to the terms of the agreement; and when the price is fixed and paid, there can be no doubt of the right of the defendant to cut and remove the timber, and convert the same to his own use.

By the contract, his right to cut and remove the timber is restricted only by the condition that he must pay before cutting or removing. What is to hinder the plaintiffs from waiving the condition of payment before the cutting and removal? And if the condition be waived, and the defendant cuts and removes the timber, does not the title vest in him just as certainly as though the contract had in terms provided

that he might cut and remove the timber before paying for the land? It would not be insisted, if the plaintiffs had taken the defendant's note at sixty days or six months, for the as-certained value of any specified parcels of lands sold, that he would not have had the right to go on and cut and remove the timber. If, by waiving the condition of payment in advance, the plaintiffs induced the defendant to go to the expense of cutting, removing and manufacturing the timber, it would be most inequitable for them to claim that the timber so cut, removed and manufactured belonged to them.

It is insisted by the appellants that the proof of such waiver of the right given by the contract to have payment made before the cutting is done, varies the written contract in an essential part, and is void because not founded upon any adequate consideration, and because it is an attempt to establish a contract for the sale of an interest in real estate by an agreement not in writing.

We are of the opinion that the waiver of payment at the time fixed in a contract for the sale of real estate, or the extension of the time for such payment, is not such a variation of the terms of the written contract as to exclude it from being received in evidence in a court of equity; and that in all cases where such waiver or extension of time has been given, either by parol or otherwise, and the purchaser has acted upon the faith of such extension or waiver, the courts have held the vendor bound by his contract. Most of the cases put it on the ground that *time* of payment, as a general thing in such contracts, is not of the essence of the contract; and some upon the ground that it would be inequitable to permit the vendor, after having induced the vendee to go on with the contract and expend his time and money in the further performance thereof after there had been a technical or other forfeiture thereof, to insist upon the forfeiture and refuse to perform the contract because the payments were not made according to the terms of the original contract. In *Hunter v. Daniel*, 4 Hare, 420, the vice-chancellor held that, under a contract in which the time of payment was affirmed by him to

be of the essence of the contract, the plaintiff, who had failed to make the payment, was entitled to have the contract performed, because, after forfeiture by nonpayment at the time, the party to whom the payment was to be made accepted a part of the money due. The vice-chancellor says: "I agree with the defendants that each breach on the part of the plaintiff, in the nonpayment of money, was a new breach of the agreement; and that, time being of the essence of the contract, each breach gave the defendants a right to rescind the contract; but that right should have been asserted the moment the breach occurred. The defendants were not at liberty to treat the agreement as still subsisting, and to take the benefit of it at the expense of the plaintiff, if they meant to insist that it was at an end."

In *Reed's Heirs and Adm'rs v. Chambers*, 6 Gill & Johns., 490, the court of appeals of Maryland held that where there was a written contract, binding under the statute of frauds, by which the vendee agreed to pay one of the creditors of the vendor, by a certain day, a part of the purchase money, a subsequent parol agreement, which postponed the day of the payment to the creditor, was not a variance of the original contract. In that case both the arguments were used that are relied on in this case, viz: that the written contract could not be changed, altered or added to by any parol agreement, and that no parol contract is binding for the sale of land or any interest therein. To these arguments the court say: "The verbal agreement was no variation or change of the written contract for the sale of the land; it was in effect to carry that contract into execution, and not to add to, or vary, or change it. As to the objection insisted upon in the answer, that Spencer forfeited his interest under the contract of purchase by not paying the purchase money according to the terms of the contract, we think it wholly untenable, because the principle is well settled that even where the time of payment is of the essence of the contract, a strict compliance at the day may be waived by the vendor. · · · In this case, if the money was not paid as stipulated by the written contract, the nonpayment at the

time originated from the express agreement of the parties, and the effect of such omission upon their respective rights must be considered as waived." So it was held that if the vendee in possession desires to rescind the contract because the vendor does not procure the conveyance within the time limited by the written contract, he must do so promptly by surrendering the possession of the premises, or he will be held to have waived the forfeiture. *Schroeppel, Adm'r, v. Hopper,* 40 Barb., 425; *United States v. Hewett,* 3 W. C. C. R., 620; *Fleming v. Gilbert,* 3 Johns., 528; *Keating v. Price,* 1 Johns. Cas., 23; *Langworthy v. Smith,* 2 Wend., 587; *Leavitt v. Savage,* 17 Maine, 72.

The same rule has been held repeatedly by this court. *Crittenden v. Drury,* 4 Wis., 205; *Hall v. Delaplaine,* 5 id., 206; *Minert v. Emerick,* 6 id., 355; *Reed v. Jones,* 8 id., 392. We are clearly of the opinion that the effect of the waiver of the time of payment of the purchase price of the land in the one case, and for the timber in the other case, under the contract between the parties to this action, gave the defendant full authority to go on and cut and remove the timber, and that he was not a trespasser in so doing. The sole object of the contract, so far as the defendant is concerned, was to acquire the power to cut, remove and manufacture the timber on the lands agreed to be purchased by him, as well as the other timber purchased on lands not agreed to be sold to him; and, under the terms of the contract, the only condition precedent to that right was payment of the purchase price before he could lawfully cut, remove and manufacture the timber so purchased. The condition precedent having been waived by the plaintiffs, there does not seem to have been any impediment to the defendant's right to cut and convert the timber to his own use. There can hardly, therefore, be a doubt but that the title to the timber so cut and severed from the realty by him, and converted into personal property, passed to the defendant.

There would be no dispute that, in the case of a sale of chattels, where, by the terms of the sale, payment was to be made before delivery, if the vendor waived or postponed the payment

and delivered the chattels, the title to them would vest in the vendee upon such delivery. In the case at bar, there was a valid written contract for the sale of the lands and timber by the plaintiffs to the defendant, with the right in the defendant under such contract to cut the timber, convert it into personalty, and apply it to his own uses and purposes, upon the single condition that he should pay either for the land or timber before such cutting and conversion. That condition having been waived by the party having the right to insist on its performance, and the defendant having been permitted to cut and convert the timber without such performance, the title must vest in him the same as it would had he performed the condition precedent.

This consequence is not strenuously denied by the learned counsel for the appellants. The strength of the argument is expended in an attempt to show that if there was such waiver by a parol agreement, it could not be shown, because it varies or changes the written contract between the parties.

In the case of *Northrup v. Trask*, 39 Wis., 515, it was held by this court that the title to a dwelling house upon lands in the possession of a vendee under a contract for the purchase thereof, upon which nothing had been paid, and where by its terms the contract had been forfeited for nonpayment of the purchase price, was in the vendee, although he severed the same from the soil and removed it after such forfeiture without the knowledge or consent of the vendor; and that no action could be maintained by the vendor to recover the possession of such house, either against the vendee or the person to whom he sold the same. The learned chief justice, who delivered the opinion, says: "It is more difficult still to understand the right of the appellant to maintain the action. He had made a subsisting contract with Lee for the sale of the lot on which Lee built the house, and of which Lee was in possession under the contract when he removed the house. It is true that Lee had failed in making payments required by the contract. But the appellant had not foreclosed the contract, and his title in the lot was that of mortgagee in fee; the equitable estate, pos-

session and right of possession being in Lee as owner of the house and lot, subject to the right of the appellant as mortgagee. Lee had, therefore, perfect right to dispose of the house; and the appellant had no possessory title to it on which he could maintain this action." Whilst the writer of this opinion does not approve of all the positions taken by the court in that case, such is, however, the law as fixed by the decision of this court; and it seems quite decisive of the question in the case at bar, as to whether the title to the timber cut, removed and manufactured by the defendant was in the defendant, if the same was cut, removed and manufactured by the defendant with the knowledge and assent of the appellants.

The appellants' counsel, however, contend that there was no sufficient evidence that the plaintiffs either waived the conditions as to payment, or assented to defendant's cutting, removing and manufacturing the timber without first paying for the same according to the conditions of the contract. We agree with the learned circuit judge that there was sufficient evidence of this fact. The defendant swears positively to the agreement; the attorney in fact for the plaintiffs, and who acted for them, does not positively deny it. His denial is at best a negative pregnant. He simply says: " No conversation that I ever had with *Bellew* would even admit the construction that I ever gave my consent to his cutting the timber *contrary to the terms of the contract.* When I was out there in the spring, he was doing a little cutting; I don't know that I objected. I probably talked with him about it. The idea was that he could pay me when he got the stuff out. *I gave him no direct formal agreement to wait for my pay until he could get out lumber. I did wait.*" This denial, which is a qualified admission of the claim made by the defendant, together with the fact that the defendant was in fact permitted to go on for two years nearly, and cut and manufacture nearly 3,000,000 feet of timber, with the knowledge and without objection on the part of the appellants, is quite sufficient to justify the finding of the circuit judge upon this point.

It is argued by the counsel for the appellants, that if the defendant relies upon the parol alteration of the original written contract, as the foundation for his cutting and carrying away the timber in question, such license did not give a right to the defendant which could not be revoked by the appellants; that as the right was an interest in real estate, it could not be created by parol; and that the appellants might therefore revoke such license at pleasure. If this were admitted, it does not change the right of the defendant to the property which he cut and converted into personal property under such license before the same was revoked. In *Tyson v. McGuineas*, 25 Wis., 656, the court say: "If the license was revocable at pleasure, it would create no interest in the land, and would only serve as a justification for acts committed while it existed." See *Miller v. R. R. Co.*, 6 Hill, 64; *Wallis v. Harrison*, 4 M. & W., 538; *Heaney v. Heeney*, 2 Denio, 625; *Nettleton v. Sikes*, 8 Met., 34; *Wood v. Leadbitter*, 13 M. & W., 838; *Wood v. Manly*, 11 A. & E., 34; *Thomas v. Sorrel*, Vaughan, 351. In American Leading Cases, Vol. 2, 739, it is said: "From what has been said it is evident that, although no interest in law can be created by a license, yet while it continues to subsist it will be as effectual for the purpose of sustaining and justifying all acts to which its authority extends, as if it operated on the estate instead of being merely personal to the party to whom it was given. So long as it remains unrevoked, the latter may without danger adopt the same course as if he possessed a substantial interest instead of a naked authority." Chief Justice VAUGHAN, in the case of *Thomas v. Sorrel, supra*, says: "But a license to hunt in a man's park and carry away the deer killed to his own use, to cut down a tree in a man's ground and carry it away the next day after, to his own use, are licenses as to the acts of hunting and cutting down the tree; but as to the carrying away of the deer killed and tree cut down, they are grants. So to license a man to eat my meat, or to fire the wood in my chimney to warm him by, as to the actions of eating, firing my wood and warming him, they are licenses; but it is consequent necessar-

ily to those actions, that my property may be destroyed in the meat eaten and in the wood burnt. So as in some cases, by consequent and not directly, and as to its effect, a dispensation or license may destroy and alter property." The authority of this opinion has never been denied by the English courts, as will be seen by a reference to the cases above cited.

Whether, therefore, in the case at bar, the defendant cut and removed the timber and trees under the original written contract, or by a parol license to do so, upon condition that he should pay for the timber so taken at some future time, the title to the timber cut and removed under such parol license before it was revoked, would vest in the defendant.

Whether the order vacating the order for the appointment of a receiver was erroneous, depended entirely on the question as to the title of the property in his possession. That property having been found to be in the defendant, it follows that the receiver should be removed, and the property delivered to the owner.

We think there was sufficient evidence to sustain the seventh finding of fact, as to the location of the mill and the price to be paid for the lands about and upon which the same is situated; and that, such agreement having been executed by the defendant except as to the payment of the purchase price, equity will enforce it; that under the final judgment rendered no injustice can be done to the appellants in consequence of such finding, as the judgment provides that no redemption of any part of the premises contracted to be sold can be made without first paying the whole sum adjudged to be due to the appellants, both for the timber cut and removed and for the value of the lands about the mill; nor do we see how this finding can prejudice the appellants in any subsequent litigation which may arise as to the ownership of the mill under the deed to Hubbard, in case the defendant fails to redeem by paying the whole amount due the plaintiffs; the court below, in its eighth finding of fact, having found that the deed to Hubbard was made without any lawful authority.

So far as this judgment affects the title to the mill and the

lands on which the same stands, it would seem to leave the title in fee in the appellants, unless the defendant redeems according to the terms of the judgment.

How far this judgment will bind Hubbard, it is unnecessary to determine; but, as we have said, we think it cannot on the whole prejudice the rights of the appellants in any contest with him as to the mill and premises, but on the other hand we think it favors their right, if it can be used by them for any purpose in any such litigation.

Whether a court of equity, in a case of this kind, would under any circumstances have the power to give the vendor of real estate a lien for the purchase money upon personal property the title to which had become vested in the vendee, because of the fact that such personal property, in its natural state, had been a part of the realty, we do not decide; but content ourselves with the remark that the evidence does not present a case in which the equities demand that such a lien should be declared. The interests of other creditors of the vendee have arisen, which would apparently give them equal equities with the vendors; and in addition, in the case of failure to redeem, the vendors have not only a judgment against the defendant for the whole amount due them for the value of the timber taken from the lands, but they take the lands with all the improvements placed thereon by the defendant, amounting at the lowest estimate to a sum exceeding the whole value of the timber taken therefrom.

The costs in this action being a matter wholly in the discretion of the court below, we do not think that this court would be justified, upon the facts of the case, in holding that the refusal to give costs to the plaintiffs was an abuse of such discretion.

RYAN, C. J. I am not quite satisfied that the parol modification of the written contract was satisfactorily established by the evidence; or that, being so established, there was satisfactory evidence to take it out of the statute of frauds. But I write this opinion mainly to correct an error into which the

learned counsel of the appellants fell in the construction of *Daniels v. Bailey*, 43 Wis., 566.

The learned gentleman contended that the case established the doctrine that the felling of timber by the purchaser of it, under a parol contract, was not a sufficient execution of the contract to take it out of the statute of frauds. This is a mistake.

The defendant in that case purchased the standing timber by two several contracts: one a written contract with one Cavanaugh; the other a parol contract with the plaintiff. The defendant cut the timber under the written contract with Cavanaugh, and not under the parol contract with the plaintiff. The court therefore held the parol contract between the plaintiff and the defendant to be wholly unexecuted, and therefore void under the statute. The case is so stated in the report as to require a careful reading, or it might mislead others as it did the counsel in this case.

*By the Court.* — The judgment of the circuit court is affirmed, with costs.