## HUBBARD *v.* BELLEW and others.

*(Circuit Court, W. D. Wisconsin.* February 4, 1882.)

1. CONTRACT—CONSTRUCTION.

A written contract was entered into in August, 1875, between B. on one side and certain parties residents of another state, by their attorney, S., on the other side. By the contract, the parties, through their attorney, agree to sell to B. a quantity of timber lands, the price to be determined by an estimate to be afterwards made of the amount of pine timber upon each description of land at $2.50 per acre for the stumpage. They also agree to sell to B. the pine timber upon certain other lands described, at the rate of $2.50 per thousand feet for stumpage. B., on his part, agreed to build a saw-mill worth $9,000 upon one of the 40-acre tracts, to be selected by him; and the other parties agree to give him title to the 40-acre tract so selected for the mill site, which B. is to have the privilege of mortgaging to an outside party in the sum of $6,500, and then he is to give a second mortgage back to the vendors to secure the faithful performance of the contract. After the execution and delivery of the contract, B. borrowed from H., the plaintiff in this suit, upon the strength of the contract, about $10,000, to build and complete the contemplated mill. After the mill was built, B. gave to H., the plaintiff herein, a deed intended as a mortgage of the mill and mill site, to secure him for his advances, without the knowledge of S., the agent of the vendors, and before they had made any conveyance of the land to B. Afterwards the vendors brought suit in the state court to enforce a specific performance of the contract, and obtained a decree for that purpose against B., from which an appeal was taken to the supreme court, and the decree affirmed, H. not having been a party to the suit. *Held,* that B., under the contract, was at liberty to select any 40-acre tract for the mill site, whether one of the forties he was to purchase or one of those from which he was to buy the timber.

2. SAME—LIEN FOR MONEYS ADVANCED.

Where moneys were advanced upon the strength of a contract, and a subsequent conveyance was received to secure such advances, the party so making the advances is, under the circumstances of the case, justly and equitably entitled to a lien upon the mill forty as against the owners of the land, but not exceeding the sum mentioned in the contract.

3. SAME—PAROL MODIFICATIONS—NOT TO AFFECT EQUITIES.

Where a party had agreed to advance money upon the strength of a written contract, he becoming the third or outside party named in the contract, any parol or other modification of the written contract unknown to him cannot affect his equities, whether made before or after the time he made the advances.

In Equity.

*J. S. Anderson* and *Vilas & Bryant,* for complainant.

*Sloan, Stevens & Morris,* for defendants.

BUNN, D. J. This is a suit in equity brought to have a lien declared and enforced against a certain 40 acres of land, and saw-mill situate thereon, lying in the county of St. Croix, in this state, described

as follows: The N. E. ¼ of the N. W. ¼ of section 34, in township No. 30 north, of range No. 15 west.

The suit is founded in part upon a written contract entered into between the defendant Patrick Bellew on the one side, and Erastus Corning, Horatio Seymour, William Allen Butler, William B. Ogden, and other persons residing in the state of New York, and B. J. Stevens, residing in the state of Wisconsin, land-owners, by Augustus Ledyard Smith, their attorney, on the other. This contract was made in August, 1875. The defendant Patrick Bellew was a lumberman residing in Wisconsin. The other parties to the contract were the owners in severalty of large quantities of pine lands lying in northern Wisconsin. By the contract they, through their agent, Augustus Ledyard Smith, residing at Appleton, Wisconsin, agree to sell to Bellew a quantity of pine lands lying in the county of St. Croix, the price to be determined by an estimate to be afterwards made of the amount of pine timber upon each description of land at $2.50 an acre for the stumpage. They also agree to sell to Bellew the pine timber upon certain other lands described in the contract at the rate of $2.50 per thousand feet for stumpage.

Bellew is to build a saw-mill worth $9,000 upon one of the 40-acre tracts of land included in the contract, to be selected by him, and the other parties to the contract agree to give him title to the 40 acres so selected for the mill site, after which Bellew is to have the privilege of mortgaging the land selected for the mill site to an outside party in the sum of $6,500, and then is to give a second mortgage back to the other parties to the contract to secure the faithful performance of the contract. The material provision in the contract, on which the suit is in part founded, is as follows:

"And the said party of the second part does hereby covenant and agree with the said parties of the first part, for and in consideration of one dollar, to him in hand paid, the receipt whereof is hereby acknowledged, to build, maintain, and erect a good, substantial saw-mill upon certain lands, to be hereinafter described; the mill to be of the value of at least $9,000. The land upon which said mill is to be built is to be hereafter selected by the party of the second part, and the forty upon which it is built and erected is to be conveyed by the parties of the first part, by good and sufficient deed, conveying to the party of the second part the title thereof in fee-simple. And the said party of the second part is to have the right to mortgage the forty upon which the said mill is built, after the same shall have been conveyed to him as aforesaid, to an outside or third party, in a sum not exceeding $6,500, and after the same is so mortgaged he covenants and agrees to give to the party of the first part a second mortgage on the said land upon which the mill is built, as aforesaid, and which is conveyed to him, as aforesaid, and which said

second mortgage is to be as security, and to be conditioned for the faithful performance of this contract on the part of the said party of the second part. And the said parties of the first part, in consideration of the building, maintaining, and erection of the said mill, as aforesaid, covenants and agrees with the said party of the second part to sell and convey to him the following described real estate, to-wit," etc.

After the execution and delivery of the contract, in November, 1875, Bellew takes it to Stephen Hubbard, shows him the contract, and requests Hubbard to advance him money to build the mill. Hubbard examines the contract, reads it through, and on the strength of the above provision he agrees to advance money, and does in fact, during that same fall and winter, to-wit, in November and December, 1875, and January and February, 1876, advance money and means to Bellew, to the aggregate in the amount of about $10,000, to build and complete the mill upon a 40 acres selected by Bellew.

It is claimed by the complainant that there was an agreement between Bellew and Smith, the agent, after Hubbard had begun to advance means to build the mill, that Bellew might mortgage for a larger sum than $6,500, and there was proof taken to this effect. But the plaintiff, on the hearing, waives all claim to any lien for more than the $6,500 and interest.

The question is whether he is entitled to any lien on the mill and mill site for this amount. The mill was built during the fall of 1875 and winter of 1875–6, and the evidence shows it to have been worth $12,000. On February 6, 1876, after Hubbard had made the advances to build the mill, and after the mill was completed, he went to Bellew and asked him to give him security on the mill forty for the advances. Bellew said he would, and they had a deed made by Bellew and his wife to Hubbard of the mill forty which was, between the parties, intended as a mortgage to secure Hubbard for the advances so made to build the mill. This was done without the knowledge of Smith, or of the land-owners whom he represented, and before they had made any conveyance of the land to Bellew, as provided in the contract. In fact, this conveyance has never been made. The deed to Hubbard by Bellew and wife is dated on February 6, 1876, expresses the consideration of $10,000, which was the amount it was agreed Hubbard had advanced, and was duly recorded as a deed in the proper office. It is in evidence that the agent, Smith, knew from time to time that Hubbard was advancing money to Bellew to build the mill, and that after the deed by Bellew to Hubbard

was given it was spoken of and recognized by Smith as a mortgage to secure Hubbard's advances.

After the mill was built, Bellew went on and cut timber from the land and made it into lumber and shingles, but, failing to pay for the land and lumber as he had agreed, the other party to the contract, in 1878, brought suit in the circuit court of St. Croix county to enforce a specific performance of the contract, and obtained a decree for that purpose, from which an appeal was taken by the plaintiffs in that suit to the supreme court, where the judgment of the circuit court was affirmed. See *Marsh* v. *Bellew*, 45 Wis. 36. Hubbard was not made a party to that suit. The circuit court, on the trial in that case, found among other things that the written contract was by a subsequent verbal agreement, made in or about September, 1875, between the parties, modified by giving Bellew permission to erect the mill on either one of three pieces of land at the option of Bellew, to-wit, the N. E. N. W. 34, the N. W. N. W. 34, or the S. W. S. W. 27, instead of on the land named in the contract as that to be purchased by Bellew, and that it was agreed that for the 40-acre tract upon which the mill should be situated, Bellew should pay as purchase price thereof the value of the stumpage thereon, at the rates provided for in the written contract, as modified by such parol agreement, and that for the other two 40-acre tracts he should pay, in addition to the value of the timber thereon, at said rate, the sum of five dollars per acre, amounting to $400, for both of said last-named 40-acre tracts; and that such modification was without any new consultation except the agreement on the part of Bellew to purchase two additional 40-acre tracts at the rate of five dollars per acre. There is evidence to show that it was agreed between Bellew and Smith that Bellew might select either one of the above three forties for the mill site, and that he should buy the other two forties and pay five dollars per acre therefor in addition to the pine stumpage. But I am not prepared to say that there was any modification of the written contract so far as the location of the mill was concerned. On the contrary, I see nothing in the contract to prevent Bellew from selecting any forty named in the contract for the mill site, whether it was one of the forties he was to purchase and take title to, or one of those from which he was to buy the timber.

It seems to me that Bellew was at liberty, under the written contract, to select any forty named in the contract that should suit his purpose of location of the mill best. The language is general; and I

see nothing in the contract to restrict him in his selection to one, any more than to the other, class of lands. The mill was to be built to accommodate the business of sawing the timber for all the lands; and it was to be built for the benefit of both parties to the contract. Bellew was, it is true, to have a deed in fee of the 40-acre tract selected; but, after mortgaging it to a third party to secure the sum of $6,500, he was to give a second mortgage to the parties to the contract, to secure the faithful performance of the contract. It was as much for the interest of one party as the other, that it should be in the best location possible, for the purpose of its construction and use. The question presented by the case is whether or not Hubbard, by virtue of his having advanced the money on the strength of the contract to build the mill, and the subsequent conveyance to him by Bellew to secure such advances, is justly and equitably entitled to a lien upon the mill forty, as against the owners of the land, for the amount of the advances made, not exceeding the sum of $6,500, mentioned in the contract; and I think he is so entitled.

It is claimed by the defendant land-owners that the contract with Bellew was an entirety, and that Bellew having failed to perform it, and a judgment of a state court having gone against him, foreclosing and cutting off his rights under the contract, and Hubbard's interests being subject and subsequent to those of Bellew, he was also substantially barred by the judgment against Bellew. But it is quite clear that this view cannot be maintained. Bellew had six years in which to cut the timber from the land and pay for it. At first he was to pay for the timber in advance of cutting from time to time, but afterwards this condition was waived, and the contract modified so as to allow him to cut the timber and pay for it and the land afterwards. But it is evident from the contract that as soon as Bellew had selected a forty for his mill site and built a good substantial mill upon it, worth $9,000, he was entitled to a deed conveying the title to that forty. All this he did in the fall of 1875 and winter of 1875-6, soon after the contract was made. There is no evidence that up to that time he had broken his contract, and it seems quite clear that under the contract, when he had built the mill, he had earned the right to a deed of the mill site, and after a deed should be given he had the right to give a first mortgage to Hubbard, to secure the $6,500 of advances. If at that time Bellew had asked for a conveyance of the mill forty he would have been entitled to receive it. It would have been the duty of the land-owners, under the

contract, to give him a deed, and I think, so far as Hubbard's rights are concerned, what ought then to have been done the court will consider as having been done. It is clear that if they had given Bellew a deed, and then he had given a deed, as he did do, to Hubbard, to secure his advances, it would have been a first lien on the premises, the same as though Bellew had given a mortgage in form. But Bellew having earned the right to a conveyance, and being entitled to one because of having built the mill, he had an equitable interest in the premises, and was in equity the substantial owner, subject of course to his obligation to give to the legal owners a second mortgage to secure the due performance of the entire contract on his part.

Hubbard's rights in the premises are not subject to those of Bellew, nor was he in any way concluded by the judgment against Bellew. On the contrary, whatever right he has is not only superior to those of Bellew, but to those of the defendant land-owners as well. This is the natural and inevitable meaning of the contract. It was clearly contemplated by the parties, and all their acts show it, that it was expected that Bellew would have to borrow money to enable him to build the mill. It was for the mutual benefit of both parties to the written contract that a mill should be built. This was no doubt the primary means relied upon by both to enable Bellew to pay for the lands and the timber, and both parties were mutually interested, not only in the building of the mill but in the selection of the best location. It is the first and one of the primary stipulations in the contract, on the part of Bellew, that he will build a mill worth at least $9,000, and it is in consideration of this that the other parties agree to sell him the land and timber; and, evidently, to enable him to build the mill, this provision is found in the contract that he shall be entitled to a deed and clear title to that forty, to enable him to mortgage it to secure an outside or third party, to secure advances; and the stipulation that, after so mortgaging it to such outside party for $6,500, Bellew should give back a second mortgage to the original owners of the land, shows that their interests in the mill and mill site were to be subject and secondary to those of the outside party who might be induced to step in and furnish money to build the mill. And this is a sufficient answer to the position taken by defendants that by modification of the contract in regard to the location of the mill an obligation was imposed upon Bellew to pay for the stumpage with the mill forty, and, besides the stumpage, to pay five dollars per acre for the two forties connected with the one on which the mill was located.

It is evident that, whatever else this modification was, it was not contemplated that Bellew should pay for these forties or any of them as a condition precedent to his right to receive a deed of the mill forty. There is nothing in the evidence and nothing in the contract to show that such was the understanding of the parties. On the contrary, it is evident that the land-owners were content to take a second lien on the mill premises to secure their rights. Under any less liberal provision very likely no one could have been found to advance moneys to build the mill. And this, I have no doubt, was in the contemplation of the parties. But this modification seems to me no more than a partial designation or selection of the mill forty, confining the selection to one of the three named forties, and that, under the written contract, this same forty might have been properly selected by Bellew, and that the additional stipulation by parol that Bellew should pay five dollars per acre, and take a deed of the other two forties, in addition to paying for the pine timber, was entirely voluntary, and has nothing to do with the question of Hubbard's rights. This modification, whatever it was, was probably made before Hubbard had begun to make his advances, and before he had made the agreement with Bellew; but there is no evidence to show that he knew anything about it when made, or that the relation of the parties had been changed from what he found them under the written contract, when he engaged to advance the means to build the mill.

I am unable to see that Hubbard's rights are affected by the modification. This provision in the contract allowing Bellew to mortgage the mill site to some outside or third party seems to me in the nature of an open letter of credit to the person who should be induced to advance that sum of money to build the mill, and thus materially add to the value of the defendants' contract, and all of the lands included therein. And when it had been shown to Hubbard, and he had engaged to advance the money and become the third or outside party named in the contract, no parol or other modification of the written contract unknown to him could affect his equities, whether made before or after that time. There is evidence in the case to show that Smith, the agent of the land-owners, knew that Hubbard was the man who was furnishing the money to build the mill, and that after the deed was given by Bellew and wife, in February, 1876, to Hubbard to secure him for such advances, Smith recognized the validity of Hubbard's claim, and told him that he would see that his

(Hubbard's) mortgage was good, and that Hubbard should not lose anything on it. Smith was the agent who made the contract on the part of the land-owners in New York, and was their general agent and representative in this state, and while the plaintiff's case does not rest on this recognition of his rights by the defendants, such recognition confirms the construction put upon the contract-deed transaction by the court, and shows what the understanding of the parties was. That construction is also confirmed by the allegations of the defendant land-owners in their bill of complaint against Bellew in the state court, where they allege, and the court finds as one breach of the contract on the part of Bellew, that he had failed to give them a second mortgage on the mill forty to secure the contract with him. Of course, as they had never conveyed the mill forty to Bellew as they agreed in the contract, it was not essential to their security that Bellew should mortgage back to them; but the allegation serves to show the understanding of the contract, and that understanding comports with the letter and plain intent thereof, and the construction now put upon it by the court.

It is insisted, also, by the defendants, that the contract between Hubbard and Bellew is void, as being within the statute of frauds. But it is evident that the statute of frauds has no application to the case. So far as the creation of any interest in land is concerned, the evidence is in writing.

I think there should be a decree in favor of the plaintiff; that, he should be adjudged to have a lien upon the mill 40 acres for the amount of $6,500, with interest at 7 per cent. from the time of finishing, say February 6, 1876; and that the premises be sold as under a mortgage proper, to satisfy the amount of his said claim, with interest and costs of suit, giving the usual time of redemption.